McCoy, Appellant, *v.* The Home Insurance Co.

Argued October 4, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Norman Snyder,* for appellant.

*Horace Michener Schell,* with him *Robert W. Beatty* and *Butler, Beatty, Greer & Johnson,* for appellee.

OPINION BY RENO, J., November 15, 1951:

Plaintiff appealed from an order of the court below dismissing his motion for judgment for want of a sufficient answer. At bar, his counsel stated that he followed the Practice Act of May 14, 1915, P. L. 483, §17, as amended, 12 P.S. §735. That Act was suspended by Pa. R. C. P. No. 1452. The sufficiency of an answer is now tested by a preliminary objection under Pa. R. C. P. No. 1017 or by a motion for judgment on the pleadings under Pa. R. C. P. No. 1034 or No. 1037. Defendant did not object to the procedure adopted by plaintiff and we raise no question regarding it. Pa. R. C. P. No. 126.

Defendant insured plaintiff's interest in the personal property located in his luncheonette. It paid the agreed value of all the property lost in a fire on December 22, 1949, including the total of the payments made by plaintiff upon bailment leases for a soda fountain, a slicing machine, and a cash register, which were totally destroyed by the fire. Plaintiff sued for the balances due to the bailors of the above equipment under his bailment contracts.[1]

The policy insured plaintiff "to the extent of the *actual cash value* of the property at the time of loss,

---

[1] The amounts which plaintiff owed to his bailors were: On the soda fountain, $1673.30; the cash register, $169.50; slicing machine, $154.00; total, $1996.80, for which sum this action was instituted.

. . . [but] in any event for [not] more than the *interest of the insured."* Attached to the policy was a "Contents Form", describing in general terms the property covered by the policy, including:

(1)[2] "Property sold but not removed, *also the insured's interest in and legal liability* for property held by the insured as follows: *in trust* or on commission, on joint account with others, on storage, for repairs, *or otherwise* held; . . ."

(2) "Subject in all other respects to the terms and conditions of this policy, this insurance is hereby extended to cover the insured's interest in and liability for property herein described purchased on any credit or installment plan . . ." (Emphasis added.)

The policy and clauses (1) and (2) insure the *interest* of plaintiff in the property, not the property itself. The terms of this policy clearly distinguish the instant case from *The Home Ins. Co. v. Baltimore Warehouse Co.,* 93 U. S. 527, 23 L. Ed. 868, and other cases, upon which plaintiff relied.[3] In that line of cases, the policies insured the *property,* that is, the merchandise which was held in trust. Here only the *interest* of plaintiff in his property, and in property held by him *"in trust . . .* or otherwise held" was insured. The actual cash value of his interest in the equipment was not greater than the installments he had paid upon the bailment leases, and that amount was paid to him. Plaintiff's further claim, if any, rests upon clauses (1) and (2). These clauses protected more than plaintiff's *interest* in the equipment; they insured his *legal liability* in respect to it. The question then is: What legal

---

[2] The numerals have been supplied by us for convenience of reference.

[3] Cases cited by plaintiff in which the property and not only the insured's interest was insured: *Roberts v. Firemen's Ins. Co.,* 165 Pa. 55, 30 A. 450; *Cannon Mills, Inc. v. Flynn,* 82 Pa. Superior Ct. 298. *Siter v. Morrs,* 13 Pa. 218, is the leading case.

liability rested upon plaintiff by virtue of the bailment leases?

Plaintiff averred that he had "purchased" the equipment. To his complaint he attached as exhibits the documents under which he acquired possession, and they closely follow the familiar form of bailment leases. Where there is an inconsistency between averments in a complaint and documents attached thereto the latter prevail. *Cohen v. Carol,* 153 Pa. Superior Ct. 596, 35 A. 2d 92. Notes given by bailee to his bailor for the unpaid balance of rent of the bailed property do not transform the bailment into a sale or a conditional sale. *Lippincott v. Scott,* 198 Pa. 283, 47 A. 1115. Actually, plaintiff does not claim as an owner, and since the enactment of the Act of April 25, 1945, P. L. 307, §1, 40 P.S. §657, which revised the form of the Standard Fire Insurance Policy and eliminated the requirement that the insured be "the sole and unconditional owner", and under the form of his policy, he was not obliged to sue in that capacity.

As stated, the bailment leases followed the usual form. They leased to plaintiff the described chattels for designated terms, provided for periodical payments of rental, stipulated that upon payment of all installments of rent title to the equipment should vest in appellant, and plaintiff agreed to return the equipment at the expiration of the term.

In the lease for the soda fountain plaintiff agreed "to surrender and deliver up possession of said equipment to the Lessor in good order and condition at the expiration of the term of this contract." In the lease for the slicing machine he agreed: "Upon the termination of this lease, I will surrender said chattels to you."

The lease of the cash register provided: "At the expiration of the rental term above specified undersigned agrees to surrender said equipment to you in as good condition as when delivered, excepting damages caused

by reasonable wear, . . ." It contains also the further provision: "Should the equipment be lost or stolen, destroyed, injured or damaged by fire, or otherwise, before the rental has been fully paid, undersigned agrees to complete payment, notwithstanding such loss, destruction, injury or damage." Reference will be hereinafter made to a further agreement between plaintiff and the cash register company concerning insurance.

The words "in trust . . . or otherwise held" in clause (1) insured the legal liability which plaintiff incurred under the bailment leases. *Williams & Manning v. Southern Mut. Ins. Co.,* 108 Pa. Superior Ct. 148, 164 A. 128. But in the absence of a contract to insure or to be responsible as an insurer[4] in respect of the bailed goods the bailee is required to exercise only due care, and his obligation is not enlarged or increased by an express agreement to return the articles in the same condition as when received. *Loeb v. Ferber,* 346 Pa. 348, 30 A. 2d 126. He is not liable for loss incurred by fire, *Schell v. Miller North Broad Storage Co., Inc.,* 142 Pa. Superior Ct. 293, 16 A. 2d 680, unless the fire results from his negligence. *Schell v. Miller North Broad Storage Co., Inc.,* 157 Pa. Superior Ct. 101, 42 A. 2d 180. In his complaint plaintiff averred that the fire "occurred wholly without the [his] fault, negligence or connivance . . ." and thus established his freedom from liability to the bailors of the soda fountain and the slicing machine. Since plaintiff incurred no legal liability as to them, defendant incurred no liability to him under clauses (1) and (2).

The bailment lease for the cash register imposed an extraordinary duty upon plaintiff. His obligation was

---

[4] *Gardner v. Freystown Mut. Fire Ins. Co.,* 350 Pa. 1, 37 A. 2d 535; *Sagransky v. Tokio Marine & Fire Ins. Co., Ltd.,* 92 Pa. Superior Ct. 500.

not only to return the bailed property, but he was also obliged to complete his payments "[s]hould the equipment be . . . destroyed, injured or damaged by fire." As to the cash register, he became an insurer, *Loeb v. Ferber,* supra, and his legal liability qua insurer was covered by his policy. But an endorsement on the bailment lease, signed by plaintiff, provided; "Without additional cost to me, and subject to the conditions of the insurance policy, you may cause equipment to be insured to the extent of your replacement value until fully paid for, against loss, destruction or damage by . . . fire . . . in a reliable company authorized to do business in this state, proceeds of such insurance to be applied, at your option, toward either repair or replacement of equipment, I, to complete payment, surrender damaged equipment and execute new contract. Insurance for my benefit shall terminate if any payment becomes past due."

Hence, if the bailor procured insurance on its cash register and collected the proceeds, plaintiff was relieved of liability as an insurer, for his bailor could not twice collect insurance on the same property. *Loeb v. Ferber,* supra, p. 352. Plaintiff's complaint was completely silent on this question, and the court below offered him an opportunity to amend. He offered no amendment, and we must conclude that he could not amend so as to show liability under his bailment lease for the cash register.

The bailor of the slicing machine entered and issued execution on the judgment note accompanying its bailment lease. This circumstance did not alter the legal relations between plaintiff and defendant. It did not increase defendant's liability under its policy. The policy did not insure plaintiff's debts. Even though the judgment was res judicata as to plaintiff and the slicing machine bailor, it did not bind defendant. Whether plaintiff should have moved to open the judgment be-

cause he was not liable as a bailee, as suggested by the court below, is not before us for decision.

The refusal of the court below to enter judgment for want of a sufficient answer was proper.

Order affirmed.