## Leming v. Carlisle Motor Sales, Inc.

*Clinton R. Weidner*, for plaintiff.

*Irwin Albert*, for defendant.

SHUGHART, P. J., April 13, 1962.—The above action involves a suit in assumpsit by a landlord against his tenant for a breach of a covenant in a written lease which provided that the tenant would keep and maintain the premises in as good condition and repair as at the time of the execution of the lease, natural wear and tear and damages happening by fire, storm or other casualties only excepted. A jury trial of the case resulted in a verdict in favor of plaintiff and against defendant in the amount of $1,875. Defendant has filed motions for judgment n. o. v. and for a new trial which are presently before us for decision.

A proper disposition of the motions requires that reference be made to the pleadings in the case. The complaint averred the execution of the lease which contained the following covenant:

"The said premises are to be kept and maintained in as good repair and condition as at present and at the expiration of this lease, they are to be surrendered in like repair and condition, natural wear and damages happening by fire, storm or other casualties only excepted."

The complaint further averred that defendant failed to maintain the boiler in the leased premises and allowed the boiler to go dry which resulted in such excessive damage to the boiler that it was necessary to replace it. The boiler was replaced and suit was brought for the replacement costs thereof. Following preliminary objections by defendant, the complaint was amended to show the value of the boiler before the occurrence and the salvage value thereafter and demanding the total sum of $2,812.56 as damages.

Defendant filed an answer to the complaint admitting the execution of the lease and admitting that possession was taken by defendant under the lease, but stating that the premises were kept and maintained in as good repair and condition as at the beginning of the term of the lease. In answer to the paragraph of the complaint averring failure to maintain the boiler and allowing the said boiler to go dry, defendant averred that the "maintenance of said boiler was in accordance with instructions, if any, received from the plaintiff, and also in accordance with instructions received from suppliers of fuel for said boiler." In another paragraph of the answer, defendant averred that the replacement of the boiler was due to the advanced age and state of disrepair of the boiler as of the date the premises were first occupied by defendant on or after April 1, 1959.

The cause of the destruction of the boiler was the issue raised by the pleadings.

At the trial, evidence was offered to show the execution of the lease of the premises and the occupancy by defendant under the lease on April 1, 1959. Plaintiffs also offered evidence that sometime in December, 1959, they received notification that the boiler on the premises had exploded. There was no direct testimony offered as to the actual explosion, but a mechanic who previously worked for defendant testified that there

had been a Christmas party in a showroom of the premises, which was used as an automobile sales and service establishment, the previous evening, which terminated somewhere about 9:00 p.m., at which time the witness left the premises.

This witness testified that when he came to work the next morning he found that the boiler had exploded. He stated that the boiler was cracked and that water had run out of the boiler covering the floor.

This witness, along with other employes of defendant, had assisted in the firing of the boiler which was hand-fired. He stated that the firing on the night in question was to be done by a Mr. Hurley, who worked as night watchman. He stated that there was a water level control on the front of the boiler that had a line on it indicating the proper water level. He stated that on the prior evening when he left the furnace appeared to be working properly and the building was warm. He testified that there was a small leak to the rear of the furnace where moisture showed along the covering on the insulation, but there were no other points where there was moisture on the surface of the boiler prior to the explosion.

Plaintiffs called Russell K. Lackey, a plumbing and heating contractor with 38 years experience. He stated that he was not familiar with the boiler prior to the explosion, but did examine it after the explosion and found every section of the boiler was broken and it was beyond repair. He gave as his opinion that the explosion was caused by permitting the water level to become low in the boiler and then, while the boiler was hot admitting cold water.

Mr. Leming, one of plaintiffs, testified that the boiler had been installed in the building in 1945, that it was in good operating order at the time defendant assumed possession of the property and that the same continued to work properly after defendant had taken possession.

In light of the foregoing, it is obvious that the testimony of plaintiffs, if accepted, was sufficient to take the case to the jury and no extended discussion is necessary to reach the conclusion that the motion for judgment n. o. v. must be overruled.

In passing upon the motion for new trial, it is essential that a determination be first made as to the basis for defendant's alleged liability. In limine, it must be recognized that the suit is in assumpsit and arises out of an alleged breach of a covenant in the lease. No tort liability is alleged. Defendant contends, however, that plaintiffs cannot recover except upon a showing of negligence on the part of defendant and further that contributory negligence of plaintiffs will defeat the claim even if negligence is shown.

Defendant agreed that the premises "be kept in as good repair and condition as at the present . . . natural wear and damages happening by fire, storm or other casualties only excepted."

"Even though a lease does not contain an express covenant to repair, the law will imply one upon the part of the tenant but it is a defense to an action on the implied covenant for failure to repair where the damage occurred without fault on the lessee's part. Earle v. Arbogast and Bastian, 180 Pa. 409, 416": Platt v. Philadelphia, 183 Pa. Superior Ct. 486, 492.

In the Platt case, Judge Ervin also said at page 492:

" 'The difference in the limitation of liability on the lessee where he has expressly covenanted to repair and where the law implied the covenant is that "When a law creates a duty or charge and the party is disabled to perform it without any default in him and hath no remedy over" then the law will excuse but when the party by his own contract creates a duty or charge upon himself he is bound to make it good if he may notwithstanding any accident by inevitable necessity because he might have provided against it. . .' "

Where a covenant to repair is expressed unconditionally, the lessee is compelled to restore the premises to their previous condition even though they have fallen into disrepair without any fault on his part. Where the parties have not limited the obligation to repair the law will imply none: Platt v. Philadelphia, supra.

In McKinley v. C. Jutte & Company, 230 Pa. 122, the lease required the lessee to return the premises in "as good order as they now are, reasonable wear and tear and the acts of God alone excepted". The premises were destroyed by a fire without fault on the part of the tenant. The court held that the fire was not an "act of God" and the lessor was entitled to recover because the want of negligence or default was not available to the lessee as a defense.

The case of Brinton v. School District of Shenango Township, 81 Pa. Superior Ct. 450, cited by defendant, is not apposite here. The action in that case was instituted in trespass and alleged negligent destruction of the building through fire. In such a case even if the covenant had provided for exemption from liability because of fire, defendant would have been liable because it was not a suit on the covenant. In the instant case, if plaintiff had proved destruction of the boiler by defendant's negligence he could have recovered even though there had been no provision for repairs in the lease.

Mumma v. Club Plan of America, 6 D. & C. 2d 266, cited by defendant, is also distinguishable. While this case also involved the destruction of a boiler, the similarity there ends. The case came before the court on a petition to open judgment entered by confession on the lease for the cost of the repairs. The affidavit of default alleged destruction of the boiler through the lessee's negligence. The strongest basis for distinction rests on the fact that the court found that there had been a fire

and "unavoidable damage" by fire was excepted in the lease as excusing repair.

In this case, defendant could have defeated recovery by pleading and proving that the damage was occasioned by fire, storm or other casualty. Had he been successful in such, then plaintiff would have been required to show negligence in the happening to render defendant liable. This defense was not raised either in the pleadings or at the trial. Defendant did plead that the boiler replacement was due to the advanced age and state of disrepair of the boiler. In short, he averred that the replacement was due to natural wear. This was the issue submitted to the jury which rejected the defense.

For the reasons given neither the pleadings nor the evidence properly raised any issue regarding negligence on the part of defendant or contributory negligence of plaintiffs, and the various points for charge regarding negligence that were submitted by defendant were properly rejected.

On cross examination, plaintiff, Harper Leming, testified that at one time the furnace had a stoker attachment, but the stoker was not large enough to operate the furnace. The stoker was therefore removed many years before the building was leased. Thereafter the furnace was hand-fired. Plaintiff's counsel objected to further cross examination on this point, because it did not deal with the condition of the furnace at the time possession was taken under the lease. The objection was sustained and counsel for defendant contends that the court erred in excluding the "defendant's testimony concerning the detachment of the water feed mechanism from the boiler in question." The condition of the boiler at the time of the execution of the lease was relevant, but its condition or the attachments thereto at an earlier time were not. Further, we cannot find that any testimony was proffered or excluded regarding an automatic "water-feeder"; the stoker

automatically fed fuel into the furnace, but there was no testimony from which it could be inferred that water was at any time admitted to the boiler automatically. Since the manner of feeding the fuel into the boiler was nowise in issue, testimony regarding it was properly excluded.

Mr. Lackey testified that a boiler of the type involved had a life expectancy of at least 45 years. Harper Leming testified that the leased building had been erected and the boiler installed in 1945. At the time of the explosion it was approximately 15 years old. The cost of replacing the boiler less salvage was $2,812.56. The jury awarded plaintiffs a verdict of $1,875, or just a few cents less than two-thirds of the replacement cost. Defendant offered testimony contradicting the evidence of plaintiffs that the boiler was in good condition at the execution of the lease and defendant also offered testimony that the life expectancy of the boiler was considerably less than that given by Mr. Lackey. Some of this testimony was extensively weakened by cross examination. The credibility of the witnesses on both points was for the jury. Their verdict is amply supported by the testimony and we cannot conclude that the verdict was excessive.

The testimony on many points was in conflict, but plaintiffs' testimony was sufficient, both in quantity and quality, to support the verdict. The motions for a new trial and for judgment n. o. v. must be overruled.

## Order of Court

And now, April 13, 1962, for the reasons given, defendant's motions for judgment n. o. v. and for a new trial be and are hereby overruled. An exception is noted for defendant.